# Richmond

WRIGHT MOTOR COMPANY, INCORPORATED, ETC.
v. BERNARD STEINHILBER AND AUGUSTA
B. STEINHILBER.

January 28, 1932.

Present, Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Page, Page & Page,* for the plaintiffs in error.

*James M. Wolcott,* for the defendants in error.

EPES, J., delivered the opinion of the court.

This case is here on a writ of error to a judgment of the Industrial Commission of Virginia making an award of compensation against the Wright Motor Company, Inc., and its insurers for the accidental death of E. K. Steinhilber, one of its employees.

The first assignment of error is that the Commission erred in adjudging that the accident which resulted in the death of E. K. Steinhilber *arose out of* his employment. It is admitted that it occurred *in the course of* his employment.

E. K. Steinhilber was employed by Wright Motor Company, Inc., as its service manager. Among his other duties it was his duty to meet persons as they came into the company's place of business, to talk to them, find out what they wanted, and to see that their needs relating to the repairing and servicing of automobiles were taken care of. His method of meeting persons was to laugh and talk with them while waiting upon them, and this had the approval of his employer.

J. B. Midgett was a motorcycle policeman of the Norfolk police force. He was accustomed to drop in at the Wright Motor Company's place of business from time to

time on merely social calls, sometimes as often as twice a week.

On February 20, 1931, the day here in question, however, Midgett came into Wright Motor Company's place of business to see Steinhilber about getting an automobile repaired which he had bought there some time before, which automobile had been wrecked.

Midgett had not gone on duty when he came to the garage of Wright Motor Company, and when he came into the garage he had his pistol in his right-hand side pocket and his holster in his hand. He walked in and Steinhilber "got to kidding" him; and reached over and hit him on the pocket in which the pistol was, patted it and shoved it further down in the pocket. Midgett said: "That is all right, you need not worry it won't shoot." While Midgett was standing in the garage talking to Steinhilber about the wrecked car, he buttoned up his coat, reached over and got his holster, which he had laid on the fender of a car, and put on his belt and holster. He then took the pistol out of his pocket and shoved it down, as if to put it in the holster. He missed the holster, brought it back up, and a second time shoved it down towards the holster. But he again missed the holster, and the pistol slipped out of his hand, fell to the floor between Midgett's legs and was discharged by the impact. The bullet struck and killed Steinhilber.

H. E. Gilliam and L. C. Heuitt, employees of Wright Motor Company, and C. M. Hamilton, who was not an employee of this company, were present in the garage when the accident happened.

Of the four justices participating in this decision Justice Holt and myself think that on this state of facts that the death of the employee was not due to an injury by accident *arising out of* the employment. Justice Hudgins and Justice Browning are of opinion that it did. Therefore, the ruling of the Industrial Commission on this point is here sustained by a divided court.

■ The second assignment of error is that the Commission erred in finding that the father and mother of the decedent were dependent upon the deceased employee within the meaning of section 40 of the workmen's compensation act of Virginia (Code Va. 1930, section 1887 [40]).

The only testimony on this point is the testimony of Mr. W. C. Steinhilber, a brother of the deceased employee, the material parts of whose testimony is as follows:

"Q. Tell the Commission, please, the arrangement that you had at home and how many people were dependent on Eddie and how far they were dependent on him?

"A. Three of us were at home, all three brothers, two of us left. Each takes responsibility of third, supporting mother, father and two sisters. For the upkeep of the house we each chipped in.

"Q. Your mother and father are how old?

"A. Mother sixty-two, father sixty-nine.

"Q. They were totally dependent as to one-third on him?

"A. Absolutely.

"Q. They were dependent on you for like amount and your younger brother for a like amount?

"A. Yes, sir.

* * * * *

"Q. How old are your sisters?

"A. One nineteen and the other twenty-one.

"Q. Are they working?

"A. Yes, sir; they are working. They don't come in on our pool.

* * * * *

"Q. I understand your mother and father have no income of any kind?

"A. Father has income.

"Q. What is that income?

"A. Navy Yard, $53.24 every month.

"Q. No other income?

"A. No, sir.

"Q. Mother has no income?

"A. No, sir.

"Q. I understand you three boys contribute $18.00 apiece?

"A. Yes, sir.

"Q. Those two daughters work but they do not contribute?

"A. No, sir.

"Q. Are they able to contribute?

"A. I would not imagine so.

"Q. Do I understand that you three boys paid $18.00 per week?

"A. Yes, sir.

"Q. That would be $72.00 per month?

"A. For three of us, yes, sir.

"Q. You mean $18.00 a week a piece?

"A. Yes, sir.

"Q. That in addition to the $53.24 is what was necessary to support the mother and father?

"A. Yes, sir.

"Q. Did you live in the house?

"A. Yes, sir. We all lived together.

"Q. Were you paying this $18.00 as board or support for family?

"A. Supporting house, payments of things around house, food and everything else.

"Q. How old are you?

"A. Thirty-four.

"Q. How old was your deceased brother?

"A. Twenty-five.

"Q. How old is your other brother?

"A. Twenty-seven.

"Q. As I understand, you three boys contributed and out of that, besides your mother and father, the three boys and two sisters all lived there?

"A. Yes, sir.

"Q. Do you know what your sisters make, what their earnings are?

"A. Youngest makes $70.00 a month.

"Q. You don't know what the other one makes?

"A. I imagine about $90.00—$80.00 or $90.00.

\* \* \* \* \*

"Q. You don't mean to say that $70.00 and $90.00 went to the support of the family?

"A. No, sir.

"Q. Did you charge them any board at all?

"A. No, sir.

"Q. They got that independent of anything else?

"A. Yes, sir.

"Q. $18.00 per week from the three boys, plus what your father got at the Navy Yard?

"A. I don't know about the $53.00, I don't know what he does with that.

"Q. You all gave $18.00 a week for the sole purpose of running the family?

"A. Yes, sir. My father, we asked him to retire out of the Yard, could have retired after twenty or twenty-five years. He finally consented to it. We just let him stay around the house, I don't know what he does with the $53.00.

"Q. You don't know whether that $53.24 went into anything for the purpose of running the family or not?

"A. No, sir.

"Q. You are under the impression the three $18.00 would support the family?

"A. It would pay part of it.

"Q. Did that take care of the house for paint and repair?

"A. Yes, sir. We had this in pool, we put it in pool and paid mother for table and paid for repairs to house. This year fixed floors, everybody taking one-third on this."

The judgment of the Industrial Commission was that the father and mother of the deceased employee were one-third dependent upon the deceased employee, and should be allowed one-third of the weekly amount to which they would be entitled if they had been wholly dependent upon him.

All of the justices participating in this decision are of opinion that the father and mother were dependent upon the deceased employee within the meaning of section 40 of the workmen's compensation act, and that the judgment of the Industrial Commission on this point should be affirmed.

*Affirmed.*